**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

JEFFREY JACKSON,                          :
                                          :    Civil Action No. 03-2075 (FSH)
              Petitioner,                 :
                                          :
              v.                          :    **OPINION**
                                          :
GRACE ROGERS, et al.,                     :
                                          :
              Respondents.                :


**APPEARANCES:**

Petitioner <u>pro</u> <u>se</u>                Counsel for Respondents
Jeffrey Jackson                       Bruce J. Kaplan
P.O. Box 768                          Simon Louis Rosenbach
New Brunswick, NJ 08903-0768          County of Middlesex
                                      Prosecutor's Office
                                      25 Kirkpatrick St., 3d Floor
                                      New Brunswick, NJ 08901


**HOCHBERG,** District Judge

        Petitioner Jeffrey Jackson, a prisoner confined at the Adult
Diagnostic and Treatment Center in Avenel, New Jersey, at the
time he filed this Petition, has submitted a petition for a writ
of habeas corpus pursuant to 28 U.S.C. § 2254.  The respondents
are Administrator Grace Rogers and the Attorney General of the
State of New Jersey.

I.   <u>BACKGROUND</u>

The relevant facts are not in dispute.

Petitioner was charged by Indictment No. 710-4-91, in Middlesex County, with first-degree aggravated sexual assault, in violation of N.J.S.A. 2C:14-2, witness tampering, and conspiracy to commit witness tampering, as well as other charges that were dismissed during a guilty plea hearing.  The indictment alleged that Petitioner had sexually assaulted a young girl and then offered her money if she would recant.

After several days of pre-trial hearings involving, <u>inter alia</u>, the admissibility of certain testimony, and jury selection, Petitioner elected to avoid trial and plead guilty to the most serious charges in the indictment, as noted above.  The plea colloquy transpired, in relevant part, as follows, with references to a plea form executed by Petitioner:

Mr. Jackson, would you stand up please, sir.

BY THE COURT:
    Q.   All right, I'm holding a plea form that's been filled out to which you're essentially pleading to an open indictment.  You're pleading guilty to first degree sexual assault which is count one of the indictment and you're pleading guilty to conspiracy charges in counts 9 and 10.  ...

    Q.   Mr. Jackson, you understand that there is no deal that's been offered to you that I am aware of and certainly there is no deal I made with you.  Is that correct?

    A.   Yes.

2

Q.   Now, it may very well be that after you establish a factual basis in count one the prosecutor may dismiss the remaining counts, but there is no agreement that, in fact, she will do so.  Do you understand that?

A.   Yes.

...

Q.   And you understand that we're about to start a trial on these charges in this indictment which for the record is 710-04-91 and as you know we've selected a jury and we've completed all the pretrial motions and hearings relevant or necessary to this case.  You understand that?

A.   Yes.

Q.   And you understand that you have a constitutional right to have a trial on all the issues that are raised in the indictment, all the allegations raised in the indictment and that before you could be convicted on any or all of those counts of the indictment the jury of 12 out of those 14 would have to conclude unanimously beyond a reasonable doubt that you, in fact, are guilty of these charges.  Do you understand that?

A.   Yes.

Q.   And that would be the trial.  Now, if you plead guilty today, there won't be a trial.  If you establish a factual basis and if I accept the guilty plea the trial becomes unnecessary because there is nothing left to try you on.  Do you understand that?

A.   Yes.

Q.   You understand today is your day in court and that if you give up your right to the trial you can't come back two weeks from now or six months from now or six years from now and say I really wasn't guilty of those things, I just said I was, now I want to try the proofs.  This is it, you understand that?

A.   Uh huh, yes.

3

Q.   All right, Now, you understand in addition to giving up your right to the trial, you also have a right of confrontation, that is, you have a right to ask questions of the State's witnesses, that's a right that you have, and you have through your attorney to do what we call cross examination.  You understand what that is?

A.   Yes.

Q.   And, in fact, you've seen some of that during the course of the pretrial proceedings in this case wherein hearings were held in order to determine the admissability of certain statements, that is, whether I would let the jury hear them or not under the Rules of Evidence and you've seen how witnesses can be questioned by your attorney or even by the Court, correct?

A.   Yes.

Q.   And you have that right through the trial as well as your lawyer and you even acting on your behalf as your own attorney has the right and the obligation to cross examine or question those witnesses that the State claims would prove your guilt beyond a reasonable doubt, that is to try to shake them from their story, to try to prove that they're not telling the truth, to try to contradict them, find out why they say what they say or how they know what [they] know and that right which is a constitutional right you'd be giving up by pleading guilty.  Do you understand that?

A.   Yes.

Q.   And you also have a constitutional right to remain silent and, in fact, I have discussed that with you in the past, you have a right to testify at trial. You also have the right to not testify or to elect to remain silent and that constitutional right can't be used by the jury or anyone else to infer you're guilty. But you're going to have to give up that constitutional right to remain silent because you're going to have to tell me under oath today what it is that you did that qualifies -- that makes you guilty of the charges to which you're pleading guilty.  Do you understand that?

A.   Yes.

4

Q.   Now, this [isn't] a situation where there is a plea bargain that I am going to look at a presentence report after the fact and say I can't go along with the plea bargain, it's too lenient, you're getting off too easy, therefore, I reject it under which circumstances you would have the right to withdraw your guilty plea, we'd go back to the beginning and go to trial.

Since there was no plea bargain you pleaded guilty basically to the indictment I have no more control over that.  Once you plead guilty to the indictment as long as you provide a factual basis that's acceptable and I accept a guilty plea that's it.  There is no chance to withdraw your guilty plea at a later date with any reasonable success, and you can ask, but absent some extraordinary circumstances, it's extremely unlikely that's you'd be permitted to withdraw your guilty plea.  You understand that?

A.   Yes.

Q.   It's not something you can do lightly.  You understand that?

A.   Yes.

Q.   Now, are you under the influence of any drugs, alcohol or any medication that might or would impair your ability to make a voluntary decision today?

A.   No.

Q.   That you're making this decision to give up your right to a trial and to plead to the indictment int his case voluntarily?

A.   Yes.

Q.   Anybody threaten you with physical harm or mental harm or any other kind of anguish to force you to plead guilty today?

A.   No.

Q.   Nobody threatened you, right?

A.   No.

5

Q.   Now, you understand that exposure that you have pleading guilty to a first degree sexual assault is up to the maximum of 20 years in jail.  You understand that?

A.   Yes.

Q.   And theoretically you could get hit with a parole disqualifier up to half of that amount which is ten years, which means you'd have to serve ten years in jail before you'd be eligible for parole.

A.   Yes.

Q.   All right, now, I'm not telling you that's what's going to happen or that's not what's going to happen.  I am going to look at the presentence reports and I am going to consider a lot of factors.  One of the factors I am going to consider is whether you have a prior record in mitigation.  There is a whole list of factors that I am sure your attorney told you about that we call aggravating factors and I am going to look at each one as it relates to you and I am going to consider any sentencing submitted to me by your attorney that's submitted to me in mitigation of your sentence.

The prosecutor is going to make their own recommendations too what they think the sentence is going to be and I am not bound by anything that she says.

If she comes back and says we want Mr. Jackson sentenced as a second degree offender, give him seven years sentence, I am going to do what I think is right. I am going to consider her recommendation, whatever it's going to be, but I am going to do ultimately what I think is appropriate under the circumstances of the case based on my view of the aggravating and mitigating factors.  You understand that?

A.   Yes.

Q.   And likewise, if she comes in and says I want the max 20 with a 10, that doesn't mean I am going to give it to you because I am going to do what I think is appropriate based on the sentence memorandum, based on the presentence reports, based on my sense and findings

with regard to the aggravating and mitigating factors.
You understand that?

    A.   Yes.

    ...

    Q.   No promises have been made to you in order to
cause you to plead guilty, correct?

    A.   Yes.

    Q.   All right, are you satisfied with the advice
you received from your attorney?

    A.   Yes.

    Q.   Do you have any questions that you would like
to ask your attorney or the court concerning the plea
or these proceedings?

    A.   No.

    ...

BY MR. CAMPBELL:
    Q.   Mr. Jackson, is it true that on February 3,
1991 while [the victim] slept overnight at your
residence in your care and custody that you entered the
room in which she was sleeping and that you attempted
to penetrate her with your penis and that you did
penetrate her slightly with your penis?

    A.   Yes.

    THE COURT:  Well, hold on a second, Mr. Jackson, I
heard the yes but also saw you shake your head no.

    THE DEFENDANT:  Yes.

    THE COURT:  So which is it?

    THE DEFENDANT:  Yes.

    THE COURT:  All right, you're sure that's your
answer.  For the record is yes, you did penetrate her
however slight?

          THE DEFENDANT:  Yes.

(Pet. Ex. Y, Transcript of Plea.)

     At his sentencing on March 24, 1994, Petitioner sought to withdraw his plea, on the ground that he did not "penetrate" the victim.  He admitted there was sexual contact, but not penetration.  The trial court did not permit Petitioner to withdraw his guilty plea, and it proceeded with sentencing. (Pet. Ex. V.)

     Following the conclusion of sentencing, the transcript of Petitioner's guilty plea was mislaid.  Petitioner's public defender appealed the sentence.  As a consequence of the missing transcript, the Superior Court, Appellate Division, remanded the case to the Superior Court, Law Division, for reconstruction of the plea hearing.

     The reconstruction hearing was held on March 31, 1998, and the primary issue was whether Petitioner admitted that he penetrated the victim.  Petitioner was not present for the hearing, but the court and counsel accepted the prosecuting attorney's recollection that penetration was established by an answer from Petitioner.  On May 13, 1998, the Appellate Division affirmed the sentence, which was the only issue raised on appeal.

     Petitioner filed a motion for reconsideration, contending that he had asked his public defender to appeal the entire conviction, not just the sentence.  He also complained that he

had not been present for the transcript reconstruction hearing
and that there were two different transcripts for the sentencing
hearing.  The Appellate Division denied the motion for
reconsideration, but ordered a second remand to settle the record
of the sentencing hearing.  After the record was settled,
Petitioner filed a third motion for reconsideration, which the
Appellate Division denied on January 27, 1999.  The Supreme Court
of New Jersey denied certification on June 8, 1999.

Petitioner then filed in this Court an application for writ
of habeas corpus.  (Civil Action No. 99-5731 (KSH).)  United
States District Judge Katharine S. Hayden of this Court ordered
that Petitioner receive a new plea transcript reconstruction
hearing, at which he was to be present.  That hearing did not
take place because, in 2001, the trial court located the missing
plea transcript.  Petitioner moved in state court for post-
conviction relief on the grounds that he did not understand the
nature and elements of the alleged offenses, that he did not
provide an adequate factual basis as to "penetration," and that
exculpatory medical evidence establishes his innocence.  On the
basis of that plea transcript, the trial court denied post-
conviction relief.  (Pet. Exs. Z-2, Z-4.)  The Appellate Division
affirmed without discussion and the Supreme Court of New Jersey
denied certification on January 28, 2003.  (Pet. Exs. Z-10, Z-33,
Z-35.)  This Petition followed.

Here, Petitioner contends that his guilty plea should be set aside because it was not entered voluntarily and knowingly.  He contends that he did not understand the nature and elements of the charges, he did not put an adequate factual basis on the record, and medical doctors created false inculpatory medical reports to counteract true exculpatory medical reports.  He also contends that inordinate delays in the state appellate process violated his due process rights, because he can no longer remember who informed him of the elements of the alleged offense after he pleaded guilty but before sentencing.

## II.  28 U.S.C. § 2254

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254 now provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

With respect to any claim adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

            (2) resulted in a decision that was based on an
     unreasonable determination of the facts in light of the
     evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

     A state court decision is "contrary to" Supreme Court

precedent "if the state court applies a rule that contradicts the

governing law set forth in [Supreme Court] cases," or "if the

state court confronts a set of facts that are materially

indistinguishable from a decision of th[e] Court and nevertheless

arrives at a result different from [the Court's] precedent."

Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (O'Connor, J.,

for the Court, Part II).  A state court decision "involve[s] an

unreasonable application" of federal law "if the state court

identifies the correct governing legal rule from [the Supreme]

Court's cases but unreasonably applies it to the facts of the

particular state prisoner's case," and may involve an

"unreasonable application" of federal law "if the state court

either unreasonably extends a legal principle from [the Supreme

Court's] precedent to a new context where it should not apply or

unreasonably refuses to extend that principle to a new context

where it should apply," (although the Supreme Court expressly

declined to decide the latter).  Id. at 407-09.  To be an

"unreasonable application" of clearly established federal law,

the state court's application must be objectively unreasonable.

Id. at 409.  In determining whether the state court's application

of Supreme Court precedent was objectively unreasonable, a habeas court may consider the decisions of inferior federal courts. Matteo v. Superintendent, 171 F.3d 877, 890 (3d Cir. 1999).

Even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference. Chadwick v. Janecka, 302 F.3d 107, 116 (3d Cir. 2002) (citing Weeks v. Angelone, 528 U.S. 225, 237 (2000)). With respect to claims presented to, but unadjudicated by, the state courts, however, a federal court may exercise pre-AEDPA independent judgment. See Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000), cert. denied, 532 U.S. 924 (2001); Purnell v. Hendricks, 2000 WL 1523144, *6 n.4 (D.N.J. 2000). See also Schoenberger v. Russell, 290 F.3d 831, 842 (6th Cir. 2002) (Moore, J., concurring) (and cases discussed therein).

The deference required by § 2254(d) applies without regard to whether the state court cites to Supreme Court or other federal caselaw, "as long as the reasoning of the state court does not contradict relevant Supreme Court precedent." Priester v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004) (citing Early v. Packer, 537 U.S. 3 (2002); Woodford v. Visciotti, 537 U.S. 19 (2002)).

Although a petition for writ of habeas corpus may not be granted if the Petitioner has failed to exhaust his remedies in state court, a petition may be denied on the merits

notwithstanding the petitioner's failure to exhaust his state court remedies.  See 28 U.S.C. § 2254(b)(2); Lambert v. Blackwell, 387 F.3d 210, 260 n.42 (3d Cir. 2004); Lewis v. Pinchak, 348 F.3d 355, 357 (3d Cir. 2003).

Finally, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).]

III.  ANALYSIS

A.  Adequacy of Guilty Plea

Petitioner contends that he did not understand the meaning of "penetration," rendering his guilty plea involuntary. Petitioner also contends that he was improperly induced to plead guilty because of a false inculpatory medical report created to counteract true exculpatory medical results.  He contends that there is not a sufficient factual underpinning for his guilty plea.

Due process requires that guilty pleas be entered intelligently and voluntarily.  See Boykin v. Alabama, 395 U.S.

13

238, 242 (1969).  A plea does not qualify as intelligent "unless a criminal defendant first receives 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'"  Bousley v. United States, 523 U.S. 614, 618 (1998) (quoting Smith v. O'Grady, 312 U.S. 329, 334 (1941).  Where, prior to pleading guilty, a defendant is provided with a copy of the indictment which recites the charge against him, [s]uch circumstances, standing alone, give rise to a presumption that the defendant was informed of the nature of the charge against him."  Id. (citation omitted).  A guilty plea entered by one fully aware of the direct consequences of the plea is voluntary "'unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).'"  Brady v. United States, 397 U.S. 742, 755 (1970) (quoting Shelton v. United States, 246 F.2d 571, 572 n.2 (5th Cir. 1956) (en banc), rev'd on confession of error on other grounds, 356 U.S. 26 (1958)).  The Court of Appeals for the Third Circuit has held that the only direct consequences relevant to evaluating the voluntariness of a guilty plea are the maximum prison term and fine for the offense charged.  See Parry v. Rosemeyer, 64 F.3d 110, 114 (3d Cir. 1995), cert. denied, 516 U.S. 1058 (1996),

14

superseded by statute on other grounds as stated in <u>Dickerson v. Vaughn</u>, 90 F.3d 87 (3d Cir. 1996).

The above standards govern the validity of a guilty plea even when a criminal defendant protests his innocence despite his entry of a guilty plea.

> [W]hile most pleas of guilty consist of both a waiver of trial and an express admission of guilt, the latter element is not a constitutional requisite to the imposition of criminal penalty [when, as in the instant case,] a defendant intelligently concludes that his interests require entry of a guilty plea and the record before the judge contains strong evidence of actual guilty.

<u>North Carolina v. Alford</u>, 400 U.S. 25, 37 91970).  The Supreme Court noted further that "[b]ecause of the importance of protecting the innocent and of insuring that guilty pleas are a product of free and intelligent choice, various state and federal court decisions properly caution that pleas coupled with claims of innocence should not be accepted unless there is a factual basis for the plea and until the judge taking the plea has inquired into and sought to resolve the conflict between the waiver of trial and the claim of innocence."  <u>Id.</u> at 38 n.10 (citations omitted).  Applying <u>Alford</u>, the Court of Appeals for the Third Circuit has held that "there must always exist some factual basis for a conclusion of guilt before a court can accept an <u>Alford</u> plea." <u>United States v. Mackins</u>, 218 F.3d 263, 268 (3d Cir. 2000), <u>cert. denied</u>, 531 U.S. 1098 (2001).

Whether a guilty plea was entered intelligently and voluntarily is primarily a question of law subject to de novo review; to the extent that determination depends upon findings of historical fact by the state court, however, those factual findings carry a presumption of correctness. See Marshall v. Lonberger, 459 U.S. 422, 431-32 (1983); Candelaria v. Lemaster, 201 F.3d 447 910th Cir. 1999) (Table, text in Westlaw); Hunt v. Dailey, 54 F.Supp.2d 1038, 1041-42 (D.Kan. 1999) (collecting cases).

Most courts look to the totality of events and circumstances preceding entry of a guilty plea in determining whether the defendant was informed and understood the nature of the charge. Some of the factors to be considered include:  (1) the complexity of the charge; (2) defendant's age; (3) defendant's record; (4) defendant's intelligence and education; (5) defendant's ability to comprehend what was being said to him; and (6) whether he was represented by counsel. See United States v. Cefaratti, 221 F.3d 502, 508 (3d Cir. 2000); United States v. Fernandez, 205 F.3d 1020, 1025 (7th Cir. 2000); United States v. Mosley, 173 F.3d 1318, 1322-23 (11th Cir. 1999); United States v. Marks, 38 F.3d 1009, 1012 (8th Cir. 1994).

Here, Petitioner was 29 years old and had a ninth-grade education at the time he entered his guilty plea.  He was represented by counsel.  The plea was not the product of a plea

16

agreement, but was entered following four days of pre-trial
hearings involving the admissibility of various testimony.
Petitioner executed a plea form indicating his knowledge of the
charges against him, including those that were later dismissed.
Moreover, Petitioner's testimony at the sentencing hearing belies
any contention that he did not understand the significance of
admitting to "penetration."  At the sentencing hearing,
Petitioner explained that he had wanted to enter a plea of guilty
to sexual assault, with no penetration, but his counsel told him
that the prosecutor would not accept such a plea on the day trial
was scheduled to begin, so he decided to plead to the most
serious charge, involving penetration, in order to avoid trial.
(Pet. Ex. V.)  Petitioner did not argue that he didn't understand
the meaning of "penetration," or that he was confused about the
nature and elements of the charges against him at the time he
entered his plea.  He didn't state that somebody had informed him
of the nature and elements of the plea, following entry of the
plea, causing him to seek to withdraw the plea because he had not
previously understood what he had done.

Moreover, the plea was entered after several days of pre-
trial hearings at which the admissibility of various testimony
was litigated.  At the time he entered his plea, he
simultaneously orally admitted penetration while shaking his
head, "no," causing the trial judge to enquire further into this

17

issue.  Finally, he also pleaded guilty to attempting to persuade the victim to change her testimony in order to avoid conviction. Plainly, Petitioner understood the nature and elements of the charges against him.  The guilty plea was entered into voluntarily and intelligently.  Petitioner is not entitled to relief on this claim.

B.   Inordinate Delay in Appeal Process

Petitioner contends that inordinate delays in the state appeal process deprived him of due process, because he no longer retains a memory of who informed him of the elements of the alleged offense, "after" the entry of the guilty plea, but "before" the sentencing proceeding began, thus hindering his claim.

It is axiomatic that once an appeal as of right has been granted, "the procedures used in deciding appeals must comport with the demands of the Due Process and Equal Protection Clauses of the Constitution." Evitts v. Lucey, 469 U.S. 387, 393, 105 S.Ct. 830, 834, 83 L.Ed.2d 821 (1985).  The constitutional touchstone is that the appellate procedure must furnish the components necessary for meaningful review.  See, e.g., Douglas v. California, 372 U.S. 353, 358, 83 S.Ct. 814, 817, 9 L.Ed.2d 811 (1963) (right to counsel on direct appeal); Griffin v. Illinois, 351 U.S. 12, 19-20, 76 S.Ct. 585, 590- 91, 100 L.Ed. 891 (1956) (right to transcript on direct appeal).  Due process guarantees an appeal that is both "adequate and effective." Evitts, 469 U.S. at 392-94, 105 S.Ct. at 834-35.  ...

Although the Supreme Court has not explicitly recognized a criminal defendant's right to a speedy appeal, in Burkett v. Cunningham, 826 F.2d 1208 (3d Cir.1987) (Burkett I), we held that the Due Process Clause "guarantees a reasonably speedy appeal if the state has chosen to give defendants the right to

18

[appeal]." Id. at 1221. ... In Burkett I, we applied
the criteria articulated in Barker v. Wingo, 407 U.S.
514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), to determine
whether appellate delay had violated due process. 826
F.2d at 1222. In Barker, the Supreme Court identified
four factors to balance when examining an alleged
speedy trial violation: "Length of delay, the reason
for the delay, the defendant's assertion of his right,
and prejudice to the defendant." 407 U.S. at 530, 92
S.Ct. at 2192. Although the interests at stake before
trial and before appeal obviously differ, they are
sufficiently similar to warrant the same general
approach. See Moore v. Arizona, 414 U.S. 25, 27, 94
S.Ct. 188, 190, 38 L.Ed.2d 183 (1973) (Barker factors
may carry "different weight where a defendant is
incarcerated after conviction"); Cody, 936 F.2d at 719
("Barker factors should not be applied uncritically" in
speedy appeal context).

Simmons v. Beyer, 44 F.3d 1160, 1169 (3d Cir. 1995) (citations and

footnote omitted), cert. denied, 516 U.S. 905 (1995).

Respondents admit that the appeal process took an unusually

long time, due to the problems with the missing and duplicate

transcripts.[1] However, Petitioner suffered no prejudice from the

delay. He did not, at the time of the sentencing hearing,

suggest that he had just been informed of the nature and elements

of the aggravated sexual assault charge and therefore wanted to

withdraw his plea because it had been based on a lack of

understanding of the meaning of "penetration." That his guilty

plea was entered knowingly and voluntarily was apparent both on

---

[1] The problems with missing records remain, as Respondents
are unable to advise the Court whether this claim was exhausted.
To the extent the claim is not exhausted, this Court will
exercise its discretion under 28 U.S.C. § 2254(b)(2) to deny the
claim.

the date of the plea and on the date of the sentencing hearing, when Petitioner sought to withdraw his plea.  Had Petitioner desired to preserve testimony he considered essential to his appeal, he could have obtained an affidavit or otherwise memorialized the name and potential testimony of the witness he claims told him about the nature and elements of the offense. Petitioner is not entitled to relief on this claim.

## IV.   <u>CERTIFICATE OF APPEALABILITY</u>

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 327 (2003).

Petitioner has failed to make a substantial showing of the denial of a constitutional right.  No certificate of appealability shall issue.

V.   <u>CONCLUSION</u>

For the reasons set forth above, the Petition must be denied.  An appropriate order follows.


<u>/s/ Faith S. Hochberg</u>
Faith S. Hochberg
United States District Judge

Dated:  November 7, 2005